GRIFFIN, J.
Appellant, Charlene Reinhardt [“Reinhardt”], the plaintiff below, appeals a summary final judgment entered in a slip-and-fall case. Although we agree with the trial judge that plaintiffs evidence is weak, we conclude it is sufficient to withstand summary judgment.
Reinhardt filed a complaint alleging that defendant, Winn-Dixie Stores, Inc. [“Winn-Dixie”], carelessly and negligently maintained its premises by allowing water or a slippery substance to remain on the floor, and as a proximate result plaintiff was injured.
The deposition testimony of Reinhardt reveals that on June 29, 1998, Reinhardt, her daughter, Mary Norris [“Norris”], and Norris’ 2-year-old son went grocery shopping at Winn-Dixie. Reinhardt was on her way back to the check-out counter when she slipped and fell. She fell adjacent to a waist high freezer, known as a coffin cooler, that was located in the same aisle as the paper towels she had taken from the shelf. In her deposition, Reinhardt said that her slip was caused by:
[a] clear-looking substance. And, it was like coming from under the freezer, along the freezer, cooler, whatever it is. It was coming out this way. That was where it was. Right along the freezer thing. It was kind of clear-looking stuff, but my daughter rubbed her finger through it, and it had some brownish-looking stuff in it. When my foot — I saw when my foot went into it, it left a little skid mark, or whatever.
Further questioning elicited the following:
DEFENSE COUNSEL: Was this liquid, was it beside the cooler, or was it also underneath, or look like it was right up next to the cooler?
REINHARDT: It looked like it was coming out from underneath the cooler. It was right up next to it, so—
DEFENSE COUNSEL: Did you see any product that looked like it was leaking, or any kind of object that looked like this substance was leaking from?
REINHARDT: Any products?
DEFENSE COUNSEL: Right.
REINHARDT: No.
Reinhardt’s feet separated as she slid in the substance and fell and she began screaming for her daughter. Norris and the store manager came to investigate and to help Reinhardt. The store manager also retrieved a camera and photographed the liquid. According to Reinhardt, the substance covered an area of several feet. Reinhardt also said that after her fall, she noticed several track marks that looked like they were made from a cart. She said it looked as though a cart was run along the liquid.
Norris testified in her deposition that she heard her mother hollering and when she approached her, her mother was on the floor in a split. Norris noticed a puddle in the area and it looked like Reinhardt slid through it. Norris did not observe *1228 any broken jars containing food that would have caused a spill. She did detect a gooey, pulpy substance on the floor and a streak made by her mother that was about two and a half feet long. She believes it was a yellowish, rusty color. She thought that the liquid came from the freezer. It was a liquid that she had never before seen. Norris also saw cart tracks but did not believe they went through the liquid. The tracks were dried and brown.
Richard Cervola [“Cervola”], the store manager, testified that he was unable to identify the substance that caused Reinhardt’s slip. He said that safety checks of the store are performed approximately every hour. The store is split into zones and zone logs are kept for each department that record the person who checked the area that hour. Cervola testified that there was no way that the substance on the floor came from the freezers because he saw no trail coming from the case. Cervola also did not recall any cart tracks and commented that if they had been present, they would be visible from the picture. Cervola said that the liquid on the ground was about three inches wide.
Robert Buchanan [“Buchanan”], a refrigerator technician at Winn-Dixie, testified in his deposition that Winn-Dixie is responsible for pulling and cleaning the coffin freezer cases about every three to six months. Buchanan says that if the freezer is not cleaned, it will ice up or start running water. Buchanan said that in January of 1998, when the case was being cleaned with a hose, water leaked on the floor, and Buchanan had to reseal around the refrigeration pipes with silicone. The water should be contained in a drain, but the drain sometimes ices over. Buchanan also stated that there were occasions when the store would not clean out the freezers per his recommendation. When there is water on the floor, Winn-Dixie usually puts up warning signs. Buchanan said that he has never seen anything drain out into the aisle or product run onto the floor, but anything was possible.
Given this testimony, it is impossible to say that there is no factual dispute concerning whether Winn-Dixie’s freezer was the source of the liquid and whether its presence on the floor was due to Winn-Dixie’s negligence.
REVERSED and REMANDED.
SAWAYA, J., concurs.
PETERSON, J., concurs specially, with opinion.